675 So.2d 980 (1996)
Angel SEGARRA, et al., Appellants,
v.
Betty MELLERSON, et al., Appellees.
Nos. 94-2862, 94-3033, 94-2879 and 94-3001.
District Court of Appeal of Florida, Third District.
May 29, 1996.
Rehearing Denied July 17, 1996.
*981 Angones, Hunter, McClure, Lynch & Williams, and Christopher J. Lynch, Miami, for appellants.
Walton Lantaff Schroeder & Carson, and Robert L. Teitler, Jack B. Woodard, Kutner, Rubinoff & Bush, and Susan S. Lerner, Miami, for appellees.
Before JORGENSON, COPE and GREEN, JJ.
JORGENSON, Judge.
In these consolidated appeals, defendants Angel and Liza Segarra appeal from a final judgment in a negligence action in favor of plaintiffs Betty and Fred Mellerson and cross defendants James McCarthy and Tom Thumb Food Stores, Inc. The Mellersons appeal from a judgment finding that James McCarthy and Tom Thumb were not at fault to any degree. The Segarras also appeal from a cost judgment in favor of the Mellersons; McCarthy and Tom Thumb appeal from an order denying their motion for attorney's fees. We affirm the final judgment in its entirety, but reverse the order denying McCarthy fees.
This negligence action arose from a head-on collision between an automobile owned by Angel Segarra and driven by his daughter Liza; and an automobile driven by Betty Mellerson. Liza Segarra was driving northbound on State Road 874 when she lost control of her car, crossed the median, and hit Betty Mellerson, who was driving southbound on 874. Mellerson sued Segarra and her father, and also sued James McCarthy and Tom Thumb, the owner of the car that McCarthy was driving. Mellerson alleged that McCarthy had caused the accident in part by suddenly switching lanes in front of Segarra, causing her to swerve and lose control of the car. It is undisputed that Mellerson was fault-free in this accident.
At trial, McCarthy testified that he had been driving behind a dump truck that was spilling pebbles onto the roadway, and that after checking the left lane for cars, he initiated a lane change to distance himself from the truck. As he started crossing the lane *982 divider, a car later identified as Segarra's came up suddenly behind him; he swerved back into his original lane to avoid her. He watched Segarra then lose control of her car and cross the median.
Two eyewitnesses testified that they were driving northbound directly behind McCarthy with a clear view of both the McCarthy and Segarra vehicles. Both witnesses saw McCarthy initiate a lane change into the far left lane, but then saw him abort the lane change and resume his earlier position. One of the witnesses saw Segarra come up alongside McCarthy's vehicle; Segarra took one hand off the steering wheel and made a "finger gesture" at McCarthy, then lost control of the car. Both eyewitnesses testified that Segarra had enough time and sufficient space on the expressway to avoid crossing the median.
Segarra's testimony was at odds with McCarthy's and the eyewitnesses'. She testified that after attending a math class and an English class at Miami-Dade Community College the morning of the accident, she had entered onto 874 heading north. According to her, as she reached the far left lane, a car driven by McCarthy invaded her lane and caused her to swerve towards the left and lose control. She testified that the accident had hindered her from pursuing her educational goals.
McCarthy's expert accident reconstruction witness testified that Segarra could have taken adequate evasive measures to avoid the accident, and that there was no reason for her to have lost control of her car. The expert opined that McCarthy had not operated his car unreasonably.
At trial, the trooper who had investigated the accident testified that he had investigated other similar accidents on the same roadway and that he was very familiar with State Road 874. Over plaintiffs' objection, the trooper testified that based upon his experience, Segarra could have recovered control of her vehicle either on the roadway itself, or on the median.[1]
Also over the plaintiffs' objection, the trial court allowed McCarthy's counsel to elicit testimony from Segarra's English professor at Miami-Dade that Segarra, contrary to her testimony, was absent from class the morning of the accident. During closing argument, McCarthy's attorney referred to that discrepancy in her testimony and argued that:
I personally have always been of the belief that if you stretch things a bit about A, you might stretch things about B.... [W]e don't think Liza Segarra has been completely candid with you about the accident.... What we wanted to show you is we didn't think she was straightforward about something as simple as where she was that day.
The jury returned a verdict finding Segarra 100% liable, and awarding the Mellersons damages of $1.2 million. The trial court denied post trial motions, including McCarthy's motion for attorney's fees pursuant to Section 768.79, Florida Statutes (1993). McCarthy had filed an offer of judgment for $75,000.00; plaintiffs had rejected the offer. The trial court denied McCarthy's motion on the ground that the rejection of the offer "was not unreasonable."
The trial court did not abuse its discretion in allowing the trooper to offer his limited opinion on the very narrow issue of whether Segarra had sufficient time and space to avoid the accident. "The decision whether a witness is qualified to testify as an expert is a factual determination falling within the broad discretion of the trial court, and a trial judge's ruling in such regard will not be disturbed unless a clear abuse of discretion has been shown." Gulley v. Pierce, 625 So.2d 45, 50 (Fla. 1st DCA 1993), rev. denied, 637 So.2d 236 (Fla.1994). The witness had been a trooper for ten years, and testified regarding his extensive experience with the roadway and median at the site of the accident. Furthermore, the testimony that the trooper gave was merely cumulative to that offered by McCarthy's accident reconstruction expert witness. Error, if any, was *983 therefore harmless. See Gulley, 625 So.2d at 50 (harmless error rule applies if such expert evidence is merely cumulative to other evidence admitted without objection). Compare with Maklakiewicz v. Berton, 652 So.2d 1208 (Fla. 3d DCA 1995) (trial court abused its discretion in allowing police officer, who was sole defense expert witness, to render opinion premised upon inadmissible evidence).
We likewise find no abuse of discretion in the trial court's admission of testimony regarding Segarra's absence from her English class the morning of the accident. The impeachment evidence was entirely appropriate, even though it admittedly addressed a collateral matter. See Allred v. State, 642 So.2d 650 (Fla. 1st DCA 1994) (trial court did not abuse its discretion in allowing witness to give impeachment testimony once defendant's testimony had put matter at issue); Brown v. State, 579 So.2d 898 (Fla. 4th DCA 1991) (same). See generally Ehrhardt, Florida Evidence § 608.1 (1995 Ed.) (adverse party may be able to introduce extrinsic evidence to contradict specific factual assertion made during witness' testimony, "even if it pertains to an otherwise collateral matter.").
Because the professor's testimony about Segarra's absence from class was proper impeachment testimony, there was no error in allowing McCarthy's attorney to comment on that evidence, and on his view of that evidence, in his closing argument. See Craig v. State, 510 So.2d 857, 865 (Fla.1987) ("When counsel refers to a witness or a defendant as being a `liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence."), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); see also Forman v. Wallshein, 671 So.2d 872 (Fla. 3d DCA 1996).
We reverse the trial court's order denying McCarthy's and Tom Thumb's motion for attorney's fees. The sole basis for the trial court's denial of the motion, filed pursuant to Section 768.79, Florida Statutes (1993), was that the plaintiffs' rejection of the offer was "not unreasonable." However, the Florida Supreme Court has recently held that the trial court has the discretion to "disallow an award of attorney's fees, but only if it determines that a qualifying offer `was not made in good faith.'" TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 612 (Fla.1995). The trial court did not have the benefit of the Supreme Court's opinion when it ruled on McCarthy's motion for fees; accordingly, we remand the issue of fees to allow the trial court to reconsider the motion in light of the standard announced in Dvorak.
In all other respects, we affirm the judgments under review.
Affirmed in part; reversed in part; remanded.
NOTES
[1] The trooper did not testify from his actual notes and log book, as they had been destroyed in Hurricane Andrew.