DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTOINE ROBINSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-1679

[November 4, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin J. Bidwill, Judge; L.T. Case No. 11015902 CF10A.

Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

**ON MOTION FOR REHEARING AND REHEARING EN BANC**

KLINGENSMITH, J.

We grant, in part, Antoine Robinson's motion for rehearing, deny rehearing en banc, and withdraw our previous opinion. We hereby substitute the following:

Antoine Robinson ("Defendant") appeals his conviction and sentence for robbery with a firearm. Although Defendant presents several issues on appeal, we confine our opinion to the following question: whether the trial court erred in overruling Defendant's objection to a detective's testimony at trial regarding the termination of an interview with Defendant. We find no error in overruling Defendant's objection, and we affirm on all other issues raised.

At trial, the State played a recording of Defendant's initial interview with the investigating detective. The end of the recording was redacted

because Defendant invoked his right to silence. After the recording was played, the State asked the detective on direct examination:

> Q: You now, I know we touched upon this before, but we heard it in the tape. [Defendant], as he was – as you were going through the rights waiver form and acknowledging everything, he also confirms his ability to leave or stop the interview at any time?
>
> A: That's correct.
>
> Q: And of course you – if he was providing any pertinent information or continuing to provide you any pertinent information, you wouldn't have terminated the interview, would you?
>
> A: Correct.

Thereafter Defendant made the following objection:

> But what you said, he is essentially leaving it hanging there that – putting information that's being on – that pertinent information is being obtained and because pertinent information isn't being obtained, he cut the interview off, or the detectives cut it off because they felt as though they weren't getting any further pertinent information. I mean, it's – the jury doesn't know that. So I think that I have to bring out in my cross examination to get out from this witness that [Defendant] is the one that invoked his right to silence.

The objection was whether this question improperly insinuated that pertinent information was initially being obtained, and once Defendant stopped sharing information, the detective ended the interview. Defense counsel thought that he would have to cross-examine the witness on the fact that it was Defendant invoking his right to silence. The prosecutor suggested that he was asking about the interview only to establish Defendant's admission that he was in the vicinity of the robbery on the date and time of the robbery. The court overruled the objection but warned that if defense counsel wanted to cross examine the detective about Defendant's invocation of his rights in the interview, the court would need to have a colloquy with Defendant as to this line of

2

questioning. The defense did not elicit any questions in this regard on cross-examination.

During closing argument, defense counsel addressed the fact that Defendant terminated the interview. Defendant claims he was forced to address this issue in closing to mitigate the situation created when the court overruled the prior objection. In closing, defense counsel also advised the jury that there was nothing wrong with Defendant's termination of the interview, and that he should not be criticized for exercising his rights. In response, without objection, the State asked the jury in its closing to consider the fact that Defendant decided to terminate the interview only when the detectives told him they had him on the surveillance video.

In asking the question the State insinuated (albeit wrongly) that the detective -- not Defendant -- ended the interview. In the context of this case, although the question was misleading, the issue of who ended the interview was irrelevant to any material issue. It did not call for the defense to explain in closing argument the termination of the interview by Defendant as an exercise of his right to remain silent. For all the jury knew the detective was not receiving pertinent information during the interview, because Defendant was claiming innocence of the crime. The harm, if any, to the defense came not from the State's question but from defense counsel's attempt to mitigate it by directly addressing Defendant's right to remain silent.

This case is not like *Melendez v. State,* 700 So. 2d 791 (Fla. 4th DCA 1997), relied on by Defendant. There, our court found that the admission of a letter written by the defendant to the police department accusing the detective investigating the defendant's case of criminal activity was irrelevant and immaterial and could mislead the jury as to the defendant's motives, thus suggesting his involvement in the crime. We conclude that the issue in this case of who terminated the interview is not similar to suggesting involvement in the crime. In fact, suggesting that the detective terminated the interview because he was not getting material information would suggest that Defendant was *not* involved in the crime.

As to Defendant's other issues involving the State's use of allegedly improper evidence at trial and improper arguments during closing, no objections to such comments and evidence were made, nor do they rise to the level of fundamental error requiring reversal of Defendant's conviction. *See Thompson v. State,* 88 So. 3d 322, 324 (Fla. 4th DCA

3

2012) (holding that when allegedly improper prosecutorial comments are "unobjected to by the defense, reversal is proper only if the prosecutor's statements constituted fundamental error").

*Affirmed.*

WARNER and MAY, JJ., concur.